# EXHIBIT A

Intervenor-Defendants' Answer and Affirmative Defenses

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| THE MACKINAC CENTER,<br><br>Plaintiff,<br><br>v.<br><br>JOCELYN BENSON, in her official capacity as Michigan Secretary of State, and DANA NESSEL, in her official capacity as Michigan Attorney General,<br><br>Defendants,<br><br>and<br><br>MICHIGANDERS FOR MONEY OUT OF POLITICS BALLOT COMMITTEE, CLEAN WATER ACTION, VOTERS NOT POLITICIANS, and JOANNA WHALEY,<br><br>Proposed Intervenor-Defendants.<br>_______________________________________/ | Case No. 1:26-cv-03154-PLM-MV<br><br>Hon. Paul L. Maloney<br><br>Magistrate Judge Maarten Vermaat |

**PROPOSED INTERVENOR-DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**

Proposed Intervenor-Defendants Michiganders for Money Out of Politics Ballot Committee ("MMOP"), Clean Water Action ("CWA"), Voters Not Politicians ("VNP"), and Joanna Whaley (together, "Intervenor-Defendants"), through their counsel, answer the Complaint for Declaratory, Injunctive, and Other Relief (ECF No. 1) filed by Plaintiff The Mackinac Center ("Plaintiff" or "Mackinac") as follows. As required by W.D. Mich. LCivR 8.2, each paragraph of the Complaint is recited verbatim, followed immediately by Intervenor-Defendants' response.

## GENERAL RESPONSES

A. Intervenor-Defendants deny each and every allegation of the Complaint that is not expressly admitted below, including any allegation contained in the Complaint's unnumbered paragraphs, headings, subheadings, footnotes, or Prayer for Relief.

B. The Complaint's headings and subheadings are reproduced below solely for ease of reference. They are not allegations to which a response is required; to the extent they are deemed allegations, Intervenor-Defendants deny them.

C. Where a response below admits that a statute, Proposal 2, or a judicial decision contains quoted language, the admission is limited to the existence of that language and is not an admission of Plaintiff's characterization, construction, or application of it.

D.References in these responses to sections of Proposal 2 refer to the sections of the Michigan Campaign Finance Act, Mich. Comp. Laws § 169.201 *et seq.*, as amended or added by Proposal 2.

## INTRODUCTION

Michigan's newly adopted Proposal 2 requires journalists, nonprofit organizations, and countless others to register with the state and disclose their activity whenever they speak in public about elected officials. Under the guise of regulating campaign finance, Proposal 2 targets everyone who spends money speaking about public policy if they talk about an elected official at the wrong time or with the wrong words. Those who do so must report who they are speaking about, how much they spend on their speech, and sometimes who their donors are. It is an alarming and far-reaching law. It also violates the First Amendment.

***ANSWER:***

**Intervenor-Defendants admit that Proposal 2 amends Michigan's campaign-finance laws. Intervenor-Defendants deny any remaining allegations in the first unnumbered paragraph of the Introduction.**

No one doubts "that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam) (quotation omitted). And the Supreme Court has long recognized that disclosure laws interfere with such free expression by making it too difficult or too risky to speak. The First Amendment thus prevents the government from requiring Americans to disclose information about their protected speech and associations unless it can satisfy a demanding standard.

***ANSWER:***

**Denied.**

Michigan cannot do that here. Proposal 2's expansive disclosure mandates for "electioneering communications" and election "expenditures" capture vast amounts of speech that have nothing to do with elections or campaigns. These requirements impose onerous costs on nonprofit organizations like the Mackinac Center for Public Policy—organizations focused on issues and public policy—which must begin monitoring and reporting information about its constitutionally protected speech the moment Proposal 2 goes into effect. And while those administrative burdens are severe, they pale in comparison to the harm Mackinac will face if it is forced to disclose its donors to the public.

***ANSWER:***

**Denied.**

Proposal 2's new reporting requirements threaten the First Amendment rights of speakers and donors, like Mackinac and its supporters, throughout Michigan. The Court should declare these mandates unconstitutional and enjoin the state from enforcing them.

***ANSWER:***

**Denied.**

**JURISDICTION AND VENUE**

1. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the plaintiff asserts claims against the defendants arising under federal law that challenge the defendants' violation of the plaintiff's civil rights under 42 U.S.C. § 1983.

***ANSWER:***

**1. Intervenor-Defendants admit that Plaintiff purports to assert claims arising under federal law pursuant to 42 U.S.C. § 1983 and that 28 U.S.C. §§ 1331 and 1343 confer subject-matter jurisdiction over claims of that kind when they present a justiciable Article III case or controversy. Intervenor-Defendants deny that Plaintiff's claims present such a case or controversy, deny that Defendants have violated Plaintiff's civil rights, and deny any remaining allegations in Paragraph 1.**

2. This Court is the proper venue because a "substantial part of the events . . . giving rise to the claim[s] occurred" in the district, 28 U.S.C. § 1391(b)(2), and all the defendants reside in this district, 28 U.S.C. § 1391(b)(1).

***ANSWER:***

**2. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 2 and therefore deny them.**

3. The Southern Division is proper because the plaintiff's principal place of business is not within this judicial district and all the defendants reside in Ingham County, Michigan. *See* W.D. Mich. LCivR 3.2(f).

***ANSWER:***

**3. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 3 and therefore deny them.**

**PARTIES**

4. Plaintiff The Mackinac Center, also known as The Mackinac Center for Public Policy, is a nonprofit, nonpartisan Michigan corporation that advocates for free markets, limited government, personal responsibility, and respect for private property through its research and education programs. Mackinac's principal place of business is in Midland County, Michigan, though it directs its speech throughout the state and receives support from donors statewide. It is tax-exempt under 26 U.S.C. § 501(c)(3).

***ANSWER:***

**4. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 and therefore deny them.**

5. Defendant Jocelyn Benson is the Michigan Secretary of State. The Secretary of State is Michigan's Chief Elections Officer and administers and enforces the Michigan Campaign Finance Act (Mich. Comp. Laws § 169.201 *et seq.*). *See* Mich. Comp. Laws § 169.215.

***ANSWER:***

**5. Admitted.**

6. Defendant Dana Nessel is the Michigan Attorney General. The Attorney General is responsible for enforcing the criminal penalties in the Michigan Campaign Finance Act. *See* Mich. Comp. Laws § 169.215(17).

***ANSWER:***

**6. Admitted.**

**FACTS**

7. On November 3, 2026, Michigan voters approved Proposal 2, a ballot initiative that amends Michigan's campaign-finance laws. A copy of Proposal 2 is attached as Exhibit 1.

***ANSWER:***

**7. Admitted.**

8. The Michigan Board of State Canvassers must certify the results no later than November 23, 2026. *See* Mich. Comp. Laws § 162.848(1).

***ANSWER:***

**8. Intervenor-Defendants admit that the Michigan Board of State Canvassers is required by law to canvass and certify the results of the November 3, 2026 general election no later than November 23, 2026. Intervenor-Defendants deny that Michigan Compiled Laws § 162.848(1) is the source of that requirement.**

9. Proposal 2 takes effect "10 days after the date of the official declaration of the vote," Mich. Const., art. II, § 9, or no later than December 3, 2026.

***ANSWER:***

**9. Admitted.**

10. Through Proposal 2, Michigan imposes burdensome regulatory requirements and disclosure obligations on organizations that spend above a threshold amount on speech that qualifies as an "electioneering communication" or an election "expenditure."

***ANSWER:***

**10. Denied.**

Electioneering communications

11. Proposal 2 requires persons who spend $5,000 or more on "electioneering communications" each calendar year to "file a report . . . within 10 days" of doing so. Prop. 2 § 51(3). The report must identify every electioneering communication made that year, disclosing the date and amount of any disbursement for the communication, the name and address of any vendor paid as part of the communication, all candidates clearly identified in the communication, and the name, address, occupation, employer, and principal place of business of any donor who contributed more than $100 to the organization "for making electioneering communications." *Id.*

***ANSWER:***

**11. Intervenor-Defendants admit that Section 51(3) of Proposal 2 states "[a]ny person, other than a committee, who makes electioneering communications aggregating $5,000 or more in a calendar year shall file a report in the same manner as described under subsection (1) within 10 days of making electioneering communications in excess of $5,000," and that the report "shall . . . include the dates of the disbursements for the communications, all candidates clearly identified in the communications, the amount of the disbursements, the name and address to whom any disbursements were made, . . . together with the name, address, occupation, employer, and principal place of business of each person that contributed $100.01 or more for making electioneering communications."**

**Intervenor-Defendants deny any characterization inconsistent with that text and deny any remaining allegations in Paragraph 11.**

12. To qualify as an "electioneering communication," an organization's speech need not be about an election or campaign. Rather, Proposal 2 defines "electioneering communication" to include any "general public communication" that refers to a "clearly identifiable candidate" (either directly or by implication) within 100 days of a general election or 30 days of a primary or special election and "is targeted to the relevant electorate where the candidate appears on the ballot." Prop. 2 § 5(4). The Secretary of State is tasked with "defining the meaning of 'targeted to the relevant electorate' for purposes of this section." *Id.* § 5(4).

***ANSWER:***

**12. Intervenor-Defendants admit that Section 5(4) of Proposal 2 defines "electioneering communication" as "a public communication by means of any broadcast, cable, or satellite communication, newspaper, magazine, outdoor advertising facility, mass mailing, telephone calls (live or prerecorded messages) of an identical or substantially similar nature, internet communication, or any other form of general public communication that: (A) references a clearly identifiable candidate, regardless of whether the communication contains express advocacy, within 100 days before a general election or within 30 days before a primary or special election where the candidate appears on the ballot; and (B) is targeted to the relevant electorate where the candidate appears on the ballot," and that Section 5(4) provides that "[t]he secretary of state shall promulgate rules defining the meaning of 'targeted to the relevant electorate' for purposes of this section." Intervenor-Defendants deny that a communication may qualify as an "electioneering communication" without referencing a clearly identifiable candidate within the specified**

**pre-election period for an election in which that candidate appears on the ballot, deny any characterization inconsistent with the statutory text, and deny any remaining allegations in Paragraph 12.**

13. Once an organization meets the aggregated $5,000 threshold, Proposal 2 requires disclosing every electioneering communication made up to that point regardless of the cost of each individual communication. Prop. 2 § 51(3).

***ANSWER:***

**13. Intervenor-Defendants admit that Section 51(3) of Proposal 2 requires "any person, other than a committee, who makes electioneering communications aggregating $5,000 or more in a calendar year" to file a report that includes, among other things, "the dates of the disbursements for the communications, all candidates clearly identified in the communications, the amount of the disbursements, [and] the name and address to whom any disbursements were made," on "an electioneering communication report form provided by the secretary of state." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 13.**

14. It is unclear what costs are included when calculating the $5,000 trigger. Unlike other provisions within Michigan's campaign-finance laws, *see, e.g.*, Mich. Comp. Laws § 169.206(1), neither the definition of "electioneering communications" nor the related reporting requirement address this issue.

***ANSWER:***

**14. Denied.**

15. It is unclear how to determine whether a donor's contribution was "for making electioneering communications." It is also unclear whether this requirement imposes obligations

on organizations that make electioneering communications to determine how particular donations are used or to obtain information from donors about the purpose of their donation.

***ANSWER:***

**15. Denied.**

16. It is unclear what "targeted to the relevant electorate" means. While Proposal 2 requires the secretary of state to promulgate rules eventually defining the meaning of this phrase, it gives no guidance as to what this provision should require. Prop. 2 § 5(4).

***ANSWER:***

**16. Denied.**

Election expenditures

17. Michigan also requires those who spend more than $500 on election-related "expenditures" each year to file reports disclosing their activity. The required report depends on who makes the expenditure.

***ANSWER:***

**17. Intervenor-Defendants admit that the Michigan Campaign Finance Act defines "committee" as "a person that receives contributions or makes expenditures for the purpose of influencing or attempting to influence the action of the voters for or against the nomination or election of a candidate, the qualification, passage, or defeat of a ballot question, or the qualification of a new political party, if contributions received total $500.00 or more in a calendar year or expenditures made total $500.00 or more in a calendar year." Intervenor-Defendants further admit that Section 51(1) of Proposal 2 provides that "[a] person, other than a committee, that makes independent expenditures, advocating the election or defeat of a candidate or the qualification, passage, or defeat of a ballot question,**

**in an aggregate amount of $500.01 or more in a calendar year shall file a report of the independent expenditures." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 17.**

18. An "expenditure" includes any payment or transfer of value made "in assistance of, or in opposition to, the nomination or election of a candidate, the qualification, passage, or defeat of a ballot question, or the qualification of a new political party." Mich. Comp. Laws § 169.206(1).

***ANSWER:***

**18. Intervenor-Defendants admit that Michigan Compiled Laws § 169.206(1) provides that "'[e]xpenditure' means a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, the qualification, passage, or defeat of a ballot question, or the qualification of a new political party." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 18.**

19. Before Proposal 2, an "expenditure" did not include payments made for a communication unless that communication expressly advocated for the election or defeat of a candidate or ballot question. *See* Mich. Comp. Laws § 169.206(2)(b), (j) (2025).

***ANSWER:***

**19. Intervenor-Defendants admit that, before Proposal 2, Michigan Compiled Laws § 169.206(2)(b) provided that "[e]xpenditure does not include" "[a]n expenditure for communication on a subject or issue if the communication does not support or oppose a ballot question or candidate by name or clear inference," and that § 169.206(2)(j) excluded,**

**"[e]xcept only for the purposes of section 47, an expenditure for a communication if the communication does not in express terms advocate the election or defeat of a clearly identified candidate so as to restrict the application of this act to communications containing express words of advocacy of election or defeat, such as 'vote for', 'elect', 'support', 'cast your ballot for', 'Smith for governor', 'vote against', 'defeat', or 'reject'." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 19.**

20. Proposal 2 expands the definition to include any "public communication" that "promotes, supports, attacks, or opposes a candidate" or ballot question, "regardless of whether the communication expressly advocates" for an election result. Prop. 2 § 6(1)(B)(II), (III).

***ANSWER:***

**20. Intervenor-Defendants admit that Section 6(1)(b)(ii)–(iii) of Proposal 2 provides that "[e]xpenditure includes, but is not limited to," "[a] public communication that does any of the following," including a communication that "[p]romotes, supports, attacks, or opposes a candidate, regardless of whether the communication expressly advocates the election or defeat of a candidate," or that "[p]romotes, supports, attacks, or opposes the qualification, passage, or defeat of a ballot question, regardless of whether the communication expressly advocates for or against such qualification, passage, or defeat." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 20.**

21. A "candidate" includes any individual who "[h]olds an elective office, unless the officeholder is constitutionally or legally barred from seeking reelection or fails to file for reelection to that office by the applicable filing deadline." Mich. Comp. Laws § 169.203(1)(e). A

"ballot question" is "a question that is submitted or is intended to be submitted to a popular vote at an election whether or not it qualifies for the ballot." Mich. Comp. Laws § 169.202(3).

***ANSWER:***

**21. Intervenor-Defendants admit that Michigan Compiled Laws §§ 169.203(1)(e) and 169.202(3) include the quoted text. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 21.**

22. The definition of "expenditure" includes some exceptions. It does not include, for example, expenditures "by a broadcasting station, newspaper, magazine, or other periodical or publication for a news story, commentary, or editorial in support of or opposition to" a candidate or ballot question. Mich. Comp. Laws § 169.206(2)(d).

***ANSWER:***

**22. Intervenor-Defendants admit that Michigan Compiled Laws § 169.206(2)(d) includes the quoted text. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 22.**

Political committees

23. An organization that spends more than $500 annually on "expenditures" qualifies as a "committee" if its spending is done "for the purpose of influencing or attempting to influence the action of the voters for or against the nomination or election of a candidate, the qualification, passage, or defeat of a ballot question, or the qualification of a new political party." Mich. Comp. Laws § 169.203(4).

***ANSWER:***

**23. Intervenor-Defendants admit that Michigan Compiled Laws § 169.203(4) includes the quoted text. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 23.**

24. Because an "expenditure" no longer requires express advocacy under Proposal 2, an organization that spends $500 on a public communication that "promotes, supports, attacks, or opposes" a candidate or ballot question qualifies as a committee if the state determines that such expenditures were made to "influenc[e] or attempt[] to influence the action of the voters."

***ANSWER:***

**24. Denied.**

25. Committees must register with the state and file several reports disclosing their activities and other financial information. Committees must also appoint a treasurer, who must authorize every expenditure. *See* Mich. Comp. Laws §§ 169.221; 169.224.

***ANSWER:***

**25. Intervenor-Defendants admit that Michigan Compiled Laws § 169.224(1) provides that "[a] committee shall file a statement of organization with the filing officials designated in section 36 to receive the committee's campaign statements," that Michigan Compiled Laws § 169.221(3) provides that "[a] committee other than a candidate committee must have a treasurer who is a qualified elector of this state if the committee conducts business through an office or other facility located in this state," and that Michigan Compiled Laws § 169.221(9) provides that "[a] committee shall not make an expenditure without the authorization of the treasurer or the treasurer's designee." Intervenor-Defendants deny any characterization inconsistent with the statutory text and**

**deny any characterization inconsistent with the statutory text and deny any remaining allegations in Paragraph 25.**

26. Michigan classifies committees into several different types: candidate committees, political party committees, house or senate political party caucus committees, independent committees, independent expenditure committees, ballot question committees, and political committees.

***ANSWER:***

**26. Intervenor-Defendants admit that Michigan Compiled Laws § 169.211(3) provides that "'[p]olitical committee' means a committee that is not a candidate committee, political party committee, house or senate political party caucus committee, independent committee, independent expenditure committee, or ballot question committee." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 26.**

27. A "political committee" is the catch-all for any committee that does not fit into any of the other categories. *See* Mich. Comp. Laws § 169.211(3).

***ANSWER:***

**27. Intervenor-Defendants admit that Michigan Compiled Laws § 169.211(3) provides that "'[p]olitical committee' means a committee that is not a candidate committee, political party committee, house or senate political party caucus committee, independent committee, independent expenditure committee, or ballot question committee." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 27.**

28. A political committee must typically file quarterly campaign statements, which include detailed reports of the organization's revenue, expenditures, and fundraising activities, as well as the name and address of every person who contributed to the committee during the relevant reporting period. *See* Mich. Comp. Laws §§ 169.226(1); 169.233(3); 169.235(1). For donors who gave more than $100, the report must also include the donor's occupation and employer. *See* Mich. Comp. Laws § 169.226(1).

***ANSWER:***

**28. Intervenor-Defendants admit that the Michigan Campaign Finance Act requires political committees to file periodic campaign statements disclosing contributions received and expenditures made, including the name and address of each contributor and, for individuals whose cumulative contributions are more than $100.00, the contributor's occupation and employer. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 28.**

29. Once an organization meets the minimum spending requirement for a committee, it must also report every expenditure exceeding $50, regardless of whether the expenditure was made for the purpose of influencing voters. Mich. Comp. Laws § 169.226(1)(j). Under Proposal 2, this includes expenditures for any public communication that "promotes, supports, attacks, or opposes" an elected official, so long as that elected official is not legally disqualified from running for reelection. *Id.*; Prop. 2 § 6(1)(B)(II), (III).

***ANSWER:***

**29. Intervenor-Defendants admit that Michigan Compiled Laws § 169.226(1)(j) requires a committee's campaign statement to include "[t]he full name and street address of each person to whom expenditures or other disbursements totaling more than $50.00**

**were made, together with the amount of each separate expenditure or disbursement to each person during the period covered by the campaign statement" and "the purpose of the expenditure or disbursement," and that Section 6(1)(b)(ii)–(iii) of Proposal 2 contains the text quoted in Paragraph 29. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 29.**

30. Unlike federal law, *see Buckley v. Valeo*, 424 U.S. 1, 79–80 (1976), Michigan does not limit committee status to organizations whose major purpose is electing candidates to office. An organization that meets the contribution and expenditure requirements in § 169.203(4) must register as a committee even if it devotes only a small or fleeting amount of its resources to election-related speech.[1]

***ANSWER:***

**30. Intervenor-Defendants admit that the definition of "committee" in Michigan Compiled Laws § 169.203(4) contains the text quoted in their answer to Paragraph 30. Intervenor-Defendants deny that *Buckley v. Valeo* or federal law requires that disclosure obligations be limited to organizations whose major purpose is electing candidates, deny any other characterization inconsistent with caselaw or the statutory text, and deny the remaining allegations in Paragraph 30.**

Footnote 1: Before Proposal 2, Michigan had a narrow safe harbor for organizations that qualified as a committee solely because they spent $500 "advocating for the election or defeat of a candidate [or ballot question.]" Mich. Comp. Laws § 169.254(3). Such organizations did not have to register as a political committee unless they also "solicit[ed] or receive[d] contributions in excess of $500.00 for the purpose of making the independent expenditure." *Id.* Thus, an organization that does not typically engage in election advocacy would not have to register as a

committee if it spent more than $500 on such advocacy unless it raised or solicited money specifically for that purpose. Proposal 2, however, does not amend this provision to account for the expansive definition of "expenditure." So this narrow provision does not apply to an organization that qualifies as a committee because it spends money on a communication that "supports" or "attacks" a candidate, Prop. 2 § 6(1)(B)(II), without "advocating for the election or defeat of [that] candidate," Mich. Comp. Laws 169.254(3).

***ANSWER:***

**Intervenor-Defendants admit that Michigan Compiled Laws § 169.254(3) contains the quoted language. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in footnote 1.**

Other independent expenditures

31. Under Proposal 2, every "person, other than a committee, that makes independent expenditures, advocating the election or defeat of a candidate or the qualification, passage, or defeat of a ballot question, in an aggregate amount of $500.01 or more in a calendar year shall file a report of the independent expenditures, within 10 days after making independent expenditures aggregating in excess of $500.01." Prop. 2 § 51(1).

***ANSWER:***

**31. Intervenor-Defendants admit that Section 51(1) of Proposal 2 contains the quoted language. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 31.**

32. An "independent expenditure" is "an expenditure by a person if the expenditure is not made in cooperation, consultation, or concert with, or at the request or suggestion of, a ballot question committee or a candidate, a candidate committee or its agents, or a political party

committee or its agents, and if the expenditure is not a contribution to a committee." Mich. Comp. Laws § 169.209(2). The report must identify donors who contributed more than $100 "for making independent expenditures." Prop. 2 § 51(1).

***ANSWER:***

**32. Intervenor-Defendants admit that Michigan Compiled Laws § 169.209(2) contains the quoted definition and that Section 51(1) of Proposal 2 requires the report to identify each person that contributed $100.01 or more "for making independent expenditures." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 32.**

Sanctions for violating the reporting requirements

33. A person who fails to report an independent expenditure or electioneering communication is guilty of a criminal misdemeanor and faces both monetary fines and imprisonment. Prop. 2 § 51(2).

***ANSWER:***

***33.*** **Intervenor-Defendants admit that Section 51(2) of Proposal 2 provides that "[i]f a person making independent expenditures or electioneering communications fails to file a report as required under this section, that person shall pay a late filing fee," and that "[a] person that violates this subsection by failing to file a report required under this section for more than 30 days after the report is required to be filed is guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $1,000.00, or both." Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 33.**

34. A person who fails to file the required campaign statements for a political committee is also guilty of a criminal misdemeanor and faces monetary fines and imprisonment. Mich. Comp. Laws §§ 169.233(8); 169.235(6). Knowingly filing an inaccurate or incomplete report will also subject an individual to monetary fines. *Id.* §§ 169.233(10); 169.235(7).

***ANSWER:***

**34. Intervenor-Defendants admit that Michigan Compiled Laws §§ 169.233 and 169.235 prescribe penalties, including misdemeanor penalties and civil fines, for certain failures to file campaign statements and for filing inaccurate or incomplete statements. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 34.**

The Mackinac Center for Public Policy

35. The Mackinac Center is a Michigan-based, non-partisan research and educational institute advancing policies fostering free markets, limited government, personal responsibility, and respect for private property.

***ANSWER:***

**35. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 and therefore deny them.**

36. Over the past four decades, Mackinac has established itself as a credible and influential voice on matters of public policy in Michigan and beyond. Its experts have published thousands of studies and articles that have influenced state and federal policymakers throughout the country. Hundreds of Mackinac's recommendations have been adopted in Michigan, and countless more in a dozen other states.

***ANSWER:***

**36. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36 and therefore deny them.**

37. Mackinac's influence stretches far and wide. Its experts are regularly cited in Michigan's major newspapers. Its research has been cited by the United States Supreme Court, and its policy proposals have received bipartisan support from four Michigan governors. Even those who oppose Mackinac's ideological goals have recognized its enormous influence on Michigan public policy.

***ANSWER:***

**37. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 and therefore deny them.**

38. To further its mission of challenging government overreach and promoting a free-market approach to public policy, Mackinac regularly engages in public communications on a variety of issues, ranging from education policy to tax reform.

***ANSWER:***

**38. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38 and therefore deny them.**

39. These communications come in many forms. Mackinac distributes research, information, and commentary throughout Michigan—online, in print, and over the radio. Among other activities, Mackinac publishes a magazine every two months, produces empirical studies analyzing public policy, reports on current events through its nonprofit news site, and hosts a weekly radio show and podcast.

***ANSWER:***

**39. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 and therefore deny them.**

40. Mackinac focuses primarily on issues that affect Michiganders. As a result, Mackinac often speaks about legislators and other elected officials in Michigan as it provides information and commentary about ongoing public policy debates and proposals. *See, e.g.*, Jamie A. Hope, *Michigan Senate bill targets paid political posts on social media* (Oct. 16, 2026), https://perma.cc/E7YJ-JD5Z; Michael D. LaFaive, *The MEDC wants more time – it's had decades* (Aug. 24, 2026), https://perma.cc/XE7Y-SMV8; James M. Hohman, *Whitmer's Major Business Subsidy Deals* (June 24, 2026), https://perma.cc/F4P9-KSN8.

***ANSWER:***

**40. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40 and therefore deny them.**

41. As a tax-exempt organization under 26 U.S.C. § 501(c)(3), however, Mackinac does not endorse, donate to, or otherwise participate in the campaigns of political candidates. It does not advocate for the election or defeat of any candidates for office.

***ANSWER:***

**41. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 and therefore deny them.**

42. Yet Mackinac often speaks about individuals who are "candidates" under Michigan law because it discusses the individuals involved in creating and implementing public policy in Michigan. This includes not only elected officials under Mich. Comp. Laws § 169.203(1)(e), but also candidates not currently serving in office who are engaged in discussions and debates about public policy.

***ANSWER:***

**42. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 42 and therefore deny them.**

43. Mackinac also regularly publishes communications about ballot questions, providing educational materials for residents and voters to help them understand the issues. Mackinac, for example, published a policy brief earlier this year that analyzed Proposal 2. This brief takes no position on Proposal 2. Instead, the policy brief explains the issues in plain language and summarizes the arguments for and against the initiative that proponents and opponents have made. *See* Michael Van Beek, *Proposal 2 of 2026: Summary and Analysis* (Oct. 7, 2026), https://perma.cc/GE7J-R7FL.

***ANSWER:***

**43. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43 and therefore deny them.**

44. Although Mackinac does not engage in election advocacy, some of Mackinac's public communications could be construed as "support[ing]," "promot[ing]," "attack[ing]," or "oppos[ing]" a ballot question or candidate under Proposal 2's new standard for expenditures.

***ANSWER:***

**44. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44 and therefore deny them.**

45. In 2012, for example, Mackinac published several stories and videos about what was then known as Proposal 4, a ballot question about unionizing home healthcare workers. *See Proposal 4: The Unionization of Home-Based Caregivers*, https://perma.cc/X4SS-FYMH

(collecting publications). Mackinac published some news and commentary strongly criticizing the proposal. *See, e.g.*, Michael Jahr, *Ballot Proposal Would Exploit Disabled Medicaid Recipients for Union's Political Agenda*, https://perma.cc/7DNN-CFGL. Mackinac also published educational information in response to misleading advertisements about the proposal. *See, e.g.*, *Proposal 4 Ads: Fact or Fiction?*, https://youtu.be/WunzGZdeMMo.

***ANSWER:***

**45. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45 and therefore deny them.**

Mackinac's speech will trigger Proposal 2's reporting requirements

46. Mackinac intends to continue regularly speaking and advocating about issues affecting Michigan in the future in the same manner it has done for decades, including by discussing the candidates and other individuals who are responsible for shaping public policy, as well as issues that are or might be part of a ballot question.

***ANSWER:***

**46. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46 and therefore deny them.**

47. Mackinac's communications will likely fall under Proposal 2's new definition of "electioneering communications" or "expenditures" (or both), thus triggering burdensome disclosure requirements and raising the risk that Mackinac and its supporters will face threats, harassment, and reprisal from those opposed to its advocacy.

***ANSWER:***

**47. Intervenor-Defendants deny that Proposal 2's disclosure requirements are unduly burdensome and deny that Plaintiff or its supporters face a reasonable probability**

**of threats, harassment, or reprisal as a result of disclosure. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 47 and therefore deny them.**

48. Much of Mackinac's speech and advocacy will likely qualify as an "expenditure" under Proposal 2's new standard because it could be construed as supporting, promoting, attacking, or opposing a candidate or ballot question. That includes, for example, Mackinac's extensive communications about Michigan's lockdown policies during the COVID-19 pandemic, which criticized Governor Whitmer's policy decisions. *See COVID-19, Lockdowns and Emergency Powers*, https://perma.cc/U8SA-97JS. Governor Whitmer was a "candidate" under Michigan throughout her entire first time as governor, *see* Mich. Comp. Laws § 169.203(1)(e), and so any public criticism of her (or her policies) during that four-year period would qualify as an "expenditure" under Proposal 2. Mackinac intends to continue publishing similar communications discussing Michigan's elected officials and ballot questions in the future.

***ANSWER:***

**48. Intervenor-Defendants admit that, under Michigan Compiled Laws § 169.203(1)(e), Governor Whitmer was a "candidate" during her first term. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48 concerning the content of Plaintiff's past and intended communications and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 48.**

49. It also likely includes Mackinac's *Business Subsidy Scorecard*, which scores each legislator based on whether he or she voted for or against taxpayer-funded subsidies. Mackinac opposes wasteful taxpayer-funded subsidies, and so this scorecard could be construed as

supporting or attacking legislators based on their voting record. Every legislator is a "candidate" under Michigan law by default unless he or she is legally barred from seeking reelection or fails to file for reelection by the relevant deadline. Mich. Comp. Laws § 169.203(1)(e).

***ANSWER:***

**49. Intervenor-Defendants admit that Michigan Compiled Laws § 169.203(1)(e) defines "candidate" to include legislators, subject to the exceptions stated in that provision. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 concerning Plaintiff's Business Subsidy Scorecard and therefore deny them. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 49.**

50. Mackinac spends significantly more than $500 each year on communications that likely qualify as an "expenditure" under Proposal 2. Mackinac would thus qualify as a political committee if the state determines that its public communications were made "for the purpose of influencing or attempting to influence the action of the voters." Mich. Comp. Laws § 169.203(4).

***ANSWER:***

**50. Intervenor-Defendants admit that the definition of "committee" in Michigan Compiled Laws § 169.203(4) and Section 6(1)(b)(ii)–(iii) of Proposal 2 contain the text quoted in Paragraph 50. Intervenor-Defendants deny any characterization inconsistent with the statutory text. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50 concerning Plaintiff's spending and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 50.**

51. Mackinac has no way of determining which of its public communications will qualify as supporting, promoting, attacking, or opposing a candidate or ballot question under Proposal 2, as this broad phrase could include virtually every statement made about those subjects. Mackinac likewise has no way of determining which communications will qualify as being made "for the purpose of influencing or attempting to influence the action of the voters." Mackinac will thus be required to either refrain from speech that could fit these vague standards or face the burdensome reporting requirements that apply to political committees.

***ANSWER:***

**51. Denied.**

52. The disclosure and compliance requirements for committees will impose a significant burden on Mackinac, requiring Mackinac to appoint a treasurer to track and authorize its contributions and expenditures. This will require diverting significant resources that would otherwise be used to further Mackinac's mission or else face civil and criminal penalties for failing to comply.

***ANSWER:***

**52. Denied.**

53. Even if Mackinac does not qualify as a committee, some of Mackinac's speech will undoubtedly be deemed "electioneering communications," as Mackinac frequently publishes news, commentary, and analysis about public officials who are running for office within 100 days of a general election and 30 days of a primary or special election. *See, e.g.*, Jarrett Skorup, *Michigan among the worst in the country for government's burden on homeownership* (Oct. 7, 2026), https://perma.cc/8W45-97TG. Although the Secretary of State has not yet defined

"targeted to the relevant electorate," Mackinac's public communications are primarily directed toward Michigan citizens and those interested in Michigan public policy.

***ANSWER:***

**53. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53.**

54. For example, Mackinac maintains an online publication, MichiganVotes (available at https://michiganvotes.org), that provides easy-to-find information about past and current legislation. Through MichiganVotes, individuals can track a bill's progress, learn which legislators voted for or against a proposal, and discover other valuable information. Every update on this website appearing 100 days before the general election or 30 days before a primary election qualifies as an "electioneering communication" if it is deemed to have been "targeted to the relevant electorate."

***ANSWER:***

**54. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54 concerning MichiganVotes and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 54.**

55. Mackinac also hosts *The Mackinac on Michigan Show*, a policy-focused radio program that provides commentary on Michigan's budget, business climate, environment, education system, and even what's happening in the courts. The radio show regularly features guest hosts, including public-policy experts, college professors, and political candidates. In one recent episode from September 24, 2026, Mackinac hosted a discussion about Proposal 2 that discussed how the proposal expands campaign-finance regulations, creates new reporting

requirements for nonprofit and advocacy and groups, and raises concerns about free speech and donor privacy. The cost for producing *The Mackinac on Michigan Show* exceeds $5,000 during the relevant period to qualify as an electioneering communication.

***ANSWER:***

**55. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55 concerning Plaintiff's radio program and its costs and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 55.**

56. Mackinac publishes and distributes the magazine *Impact* six times a year. This magazine provides updates on the Mackinac's projects, staff, leadership, and other developments that impact the pursuit of its mission. The magazine features stories and profiles about individuals who have championed free-market reforms and the supporters who helped make it happen.

***ANSWER:***

**56. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56 and therefore deny them.**

57. The Mackinac Center frequently mentions policymakers and political candidates by name in *Impact*. The issue published on July 15, 2026, for example, included an article titled *An Evening with the Mackinac Center Captured the Spirit of 1776* , which recounted the Center's annual reception held on June 5, 2026. The article described how more than 500 people attended the reception, including more than "30 current and former elected officials, among them former governors John Engler and Rick Snyder, U.S. Representatives Tom Barrett and John James, former Attorney General Mike Cox, and state Senator Aric Nesbitt."[2] At the time the Mackinac

Center published this article, both Rep. James and former Attorney General Cox were candidates for Michigan governor.

***ANSWER:***

**57. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57 and therefore deny them.**

58. The cost of producing, printing, and distributing *Impact* exceeds $5,000 during the relevant period to qualify as an "electioneering" communication. Thus, each issue that runs within the relevant time period will likely trigger the reporting requirement for electioneering communications if it refers to a candidate for elected office.

***ANSWER:***

**58. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58 concerning Plaintiff's costs and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 58.**

59. Mackinac's nonprofit news service, Michigan Capitol Confidential, regularly features public communications that discuss lawmakers and other elected officials who qualify as candidates under Michigan law.

***ANSWER:***

**59. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 59 and therefore deny them.**

60. Mackinac also hosts events to educate people about policy issues affecting Michigan. A recent example is an event held on September 16, 2026, that featured several panelists who discussed tax policy. One of the panelists was Michigan state Representative Mark

Tisdel, who was also running for reelection at the time. Events like these, which Mackinac publishes online, exceed the $5,000 threshold for electioneering communications.

***ANSWER:***

**60. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 60 and therefore deny them.**

61. Proposal 2 will require Mackinac to continuously track its spending for all public communications that directly or indirectly refer to a candidate for office during the relevant period to determine when it exceeds the $5,000 aggregate threshold for reporting. Mackinac does not currently calculate and monitor the costs for each individual communication and has no way of doing so. Complying with Proposal 2 will require Mackinac to divert significant resources to this task that would have otherwise been used to further Mackinac's mission.

***ANSWER:***

**61. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61 and therefore deny them.**

62. Mackinac has historically been free to discuss candidates within the context of its issue-focused advocacy. Now Mackinac will have to consider the risks and burdens from the disclosure requirements when deciding whether to refer to a candidate, even just indirectly, in its public communications. Mackinac will likely refrain from referring to some candidates to minimize the amount of disclosure required.

***ANSWER:***

**62. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 and therefore deny them.**

Mackinac opposes disclosing its constitutionally protected activity and donors

63. In addition to the regulatory burdens, Mackinac faces significant harm from Proposal 2's donor-disclosure requirements.

***ANSWER:***

**63. Denied.**

64. If Mackinac qualifies as a committee, it must file periodic reports disclosing the "full name of each individual from whom contributions are received during the period covered by the campaign statement, together with the individual's street address." Mich. Comp. Laws § 169.226(1)(e). For donors who give more than $100, Mackinac must also identify their employer. *Id.*

***ANSWER:***

**64. Intervenor-Defendants admit that Michigan Compiled Laws § 169.226(1) requires a committee's campaign statements to identify persons from whom the committee received contributions during the reporting period, including street addresses and, for contributors of more than $100, additional identifying information. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 64.**

65. These disclosure requirements will chill, or create an unnecessary risk of chilling, Mackinac's speech and association.

***ANSWER:***

**65. Denied.**

66. Mackinac relies on financial support from individuals, corporations, and foundations that share its commitment to free markets and liberty.

***ANSWER:***

**66. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66 and therefore deny them.**

67. Most of Mackinac's donors give more than $100 each year.

***ANSWER:***

**67. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67 and therefore deny them.**

68. Like most groups that engage in public advocacy, often on controversial issues, Mackinac and its supporters value their First Amendment right to associate privately. Their ability to exercise these rights to associate with each other to fulfill their ideological goals would be significantly damaged if they could not maintain the privacy of their relationships, as Mackinac's supporters would risk harassment and reprisal from those who oppose Mackinac's mission.

***ANSWER:***

**68. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68 concerning the beliefs and values of Plaintiff and its supporters and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 68.**

69. As a government watchdog, Mackinac often speaks on controversial topics—including blowing the whistle on illegal activities by both public and private entities. Unsurprisingly, Mackinac has drawn pushback and counter-speech from those who disagree. While much of that is expected when engaging with the public about important policy issues, Mackinac has experienced harassment beyond reasonable civic debate.

***ANSWER:***

**69. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69 and therefore deny them.**

70. In one notable example, the United States Department of Justice brought criminal charges against an Illinois woman for making death threats against Mackinac and its staff after Mackinac received national publicity when it requested documents from several public universities related to a labor-policy dispute. *See* Tom Gantert, *Mackinac Center Received Bomb Threats and Death Threats over FOIA Request* (Apr. 1, 2011), https://perma.cc/98ZS-M4EH; Tom Gantert, *Illinois Woman Charged with Making Death Threats Against Mackinac Center* (Feb. 15, 2012), https://perma.cc/582T-5BLH; *see also United States v. Campbell*, No. 1:12-CR-75, Doc. No. 15, PageID#19–20 (N.D. Ill. Apr. 18, 2012). The woman left several voicemails at Mackinac's office threatening to kill multiple individuals and their families.

***ANSWER:***

**70. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 70 and therefore deny them.**

71. Mackinac has also experienced activists intimidating its donors into withdrawing their support. In one case, an organization targeted an insurance company that had supported Mackinac for many years with both cash and in-kind contributions. The organization, which endorsed the insurance company to its members, threatened to withdraw that endorsement unless it stopped supporting Mackinac. In response, the insurance company ceased all support for Mackinac.

***ANSWER:***

**71. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 71 and therefore deny them.**

72. Mackinac's experience with harassment makes it value the privacy of its associations, including the identity of its donors and its relationships with third-party vendors who make its speech and advocacy possible. Whenever information about a donor or vendor is published, the risk that activists might target those individuals or organizations for harassment or intimidation increases. As a result, Mackinac keeps this information as private as possible and avoids unnecessary disclosure to minimize the risk of future problems arising. Mackinac thus does not ordinarily disclose the identity of its donors, supporters, or third-party business partners and vendors.

***ANSWER:***

**72. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 72 concerning Plaintiff's practices and motivations and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 72.**

73. Proposal 2 will require Mackinac to disclose that information if it qualifies as a committee or if its spending on electioneering communications exceeds $5,000.

***ANSWER:***

**73. Intervenor-Defendants admit that a committee, and a person whose spending on electioneering communications exceeds the statutory threshold, must file reports containing the information required by statute, including, for electioneering communications, the name and address of each person. Intervenor-Defendants deny any**

**characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 73.**

74. Many of Mackinac's donors will stop giving if Mackinac must publicly identify them as donors because they fear that they could face harassment or other forms of reprisal. Other future potential donors will likely refrain from donating for the same reason.

***ANSWER:***

**74. Denied.**

75. Even if Mackinac does not qualify as a committee and thus must only disclose donors who give more than $100 "for making electioneering communications," the vagueness of this provision only amplifies the chilling effect. Neither Mackinac nor its donors can determine whether a contribution is given "for making electioneering communications." Donors will likely give less to avoid appearing on this disclosure report out of fear that they could face harassment or other forms of reprisal.

***ANSWER:***

**75. Denied.**

76. It is likely that donors will refuse to contribute to Mackinac, and current donors will cease to contribute (or lessen their contributions) because of the fear that those donors will face harassment or intimidation from disclosure.

***ANSWER:***

**76. Denied.**

COUNT ONE
RIGHT OF FREE SPEECH AND ASSOCIATION, U.S. CONST. AMENDS. I, XIV
EXACTING SCRUTINY - ELECTIONEERING COMMUNICATIONS
42 U.S.C. § 1983

77. Plaintiff realleges and incorporates by reference paragraphs 1 through 76.

***ANSWER:***

**77. Intervenor-Defendants incorporate by reference their responses to Paragraphs 1 through 76 as if fully set forth herein.**

78. The First Amendment, which applies against Michigan by operation of the Fourteenth Amendment, guarantees the right to free speech.

***ANSWER:***

**78. Admitted.**

79. "[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam) (quotation omitted). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).

***ANSWER:***

**79. Intervenor-Defendants admit that the quoted language appears in *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam), and *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).**

80. Laws requiring organizations to disclose information about their protected speech must overcome exacting scrutiny. *See Boone Cnty. Republican Party Exec. Comm. v. Wallace*, 132 F.4th 406, 428 (6th Cir. 2025). "Exacting scrutiny requires a substantial relation between the disclosure requirement and a sufficiently important government interest, and that the disclosure requirement be narrowly tailored to the interest it promotes." *Id.*

***ANSWER:***

**80. Intervenor-Defendants admit that the quoted language appears in *Boone County Republican Party Executive Committee v. Wallace*, 132 F.4th 406, 428 (6th Cir. 2025). Intervenor-Defendants deny any characterization inconsistent with that decision and deny the remaining allegations in Paragraph 80.**

81. Whether the government can satisfy narrow tailoring turns on whether it "seriously undertook to address the problems it faces with less intrusive tools readily available to it." *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 404 (6th Cir. 2022) (citation modified). That means "the government must 'demonstrate its need' for the disclosure regime 'in light of any less intrusive alternatives.'" *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1247 (10th Cir. 2023) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 613 (2021)).

***ANSWER:***

**81. Intervenor-Defendants admit that the quoted language appears in *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 404 (6th Cir. 2022), and *Wyoming Gun Owners v. Gray*, 83 F.4th 1224, 1247 (10th Cir. 2023). Intervenor-Defendants deny any characterization inconsistent with those decisions and deny the remaining allegations in Paragraph 81.**

82. Discussing matters of public policy and advocating for free-market solutions to such issues, including references to public officials and candidates for office, is protected speech under the First Amendment.

***ANSWER:***

**82. Admitted.**

83. The disclosure requirements for electioneering communications are not substantially related or narrowly tailored to an important government interest. While the

Supreme Court recognizes an informational interest in "provid[ing] the electorate with information 'as to where political campaign money comes from,'" *Buckley*, 424 U.S. at 66 (quotation omitted), Michigan cannot prove its disclosure requirement for electioneering communications is substantially related or narrowly tailored to that interest.

***ANSWER:***

**83. Denied.**

84. The required report for electioneering communications captures far more protected speech than that related to campaigns or elections. It includes all public communications that directly or indirectly refer to a candidate so long as those communications occur within 100 days of the general election or 30 days of a primary or special election—more than 25 percent of the entire calendar year—and are targeted to the relevant electorate. The definition is not limited to communications made through certain channels (such as broadcast or radio), nor is it limited to third-party advertisements or similar communications distributed by another party for a fee. And while the reporting requirement is not triggered until a speaker spends an aggregate of $5,000 on such communications, once the threshold is met, an organization must report information about every electioneering communication made to that point.

***ANSWER:***

**84. Denied.**

85. The reporting requirements burden Mackinac's ability to engage in constitutionally protected speech by imposing onerous costs on Mackinac and exposing it and its supporters to harassment. This creates an impermissible chilling effect on Mackinac's speech and association.

***ANSWER:***

**85. Denied.**

86. Mackinac does not regularly monitor the costs of each communication that it publishes, and it has no way of tracking such expenses. Complying with the reporting requirements will impose significant costs, diverting Mackinac's resources that would otherwise have been used to further its mission of advocacy and education.

***ANSWER:***

**86. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86 concerning Plaintiff's current practices and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 86.**

87. The disclosure requirements will also burden Mackinac's right to speech and association by deterring donors from making financial contributions to the organization and deterring third-party vendors from doing business with Mackinac. Every time Mackinac publishes the identity of a donor or third-party vendor, it increases the risk that activists or other individuals who disagree with it on matters of public policy will target the donors or its third-party vendors for harassment and intimidation, as has happened in the past.

***ANSWER:***

**87. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 87 concerning the intentions of Plaintiff's donors and vendors and its past experiences and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 87.**

88. The reporting requirements for "electioneering communications" are thus facially overbroad and fail exacting scrutiny under the First Amendment. Alternatively, the reporting requirements for "electioneering communications" are overbroad and fail exacting scrutiny as applied to organizations like Mackinac, which do not endorse political candidates or otherwise advocate for the election or defeat of political candidates.

***ANSWER:***

**88. Denied.**

89. By enforcing Proposal 2's reporting requirements for electioneering communications, Defendants, under color of law, deprive Plaintiff of its right to freedom of speech and association in violation of the First and Fourteenth Amendment to the United States Constitution. Mackinac is thus damaged in violation of 42 U.S.C. § 1983 and is entitled to declaratory relief, a temporary restraining order, a preliminary and permanent injunction against continued enforcement of the unconstitutional law, and attorney fees and expenses under 42 U.S.C. § 1988.

***ANSWER:***

**89. Denied.**

COUNT TWO
RIGHT OF FREE SPEECH AND ASSOCIATION, U.S. CONST. AMENDS. I, XIV
VAGUENESS - ELECTIONEERING COMMUNICATIONS
42 U.S.C. § 1983

90. Plaintiff realleges and incorporates by reference paragraphs 1 through 76.

***ANSWER:***

**90. Intervenor-Defendants incorporate by reference their responses to Paragraphs 1 through 76 as if fully set forth herein.**

91. The Due Process Clause of the Fourteenth Amendment prohibits enforcement of vague laws. *See Miller v. City of Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2010). The First Amendment likewise forbids enforcement of laws so vague as to chill protected speech. *Id.* "[R]egulated parties should know what is required of them so they may act accordingly." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012). And "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.*

***ANSWER:***

**91. Intervenor-Defendants admit that the Due Process Clause prohibits enforcement of laws that are unconstitutionally vague and that the quoted language appears in *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012). Intervenor-Defendants deny that Proposal 2 is vague and deny any remaining allegations in Paragraph 91.**

92. The reporting requirements for "electioneering communications" are triggered whenever an organization "makes electioneering communications aggregating $5,000 or more in a calendar year." Prop. 2 § 51(3). The law does not identify what costs are included in making this determination. Organizations thus do not know, for example, whether the law is triggered based on a calculation of the proportionate cost of staff time overhead expenses, or whether it is limited to payments made to third parties.

***ANSWER:***

**92. Intervenor-Defendants admit that Section 51(3) of Proposal 2 contains the quoted language. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 92.**

93. Because of this vagueness, Mackinac cannot determine when the law's reporting requirements are triggered.

***ANSWER:***

**93. Denied.**

94. The law's requirement that Mackinac disclose the identity of donors who contributed more than $100 "for making electioneering communications" is likewise vague. Prop. 2 § 51(3). It is unclear what qualifies as a donation "for making electioneering communications," or whether the law imposes new obligations on organizations to determine how funds are used.

***ANSWER:***

**94. Denied.**

95. Most of Mackinac's donations are not restricted for a specific purpose, and none of its donors restrict contributions to be used only for what Proposal 2 now deems an "electioneering communication." But Mackinac regularly makes communications that will qualify as "electioneering communications" under Proposal 2, and many of its donors know about and support such efforts. Mackinac cannot determine which donors must be disclosed under the new reporting requirement for electioneering communications. This vagueness will deter some donors from giving Mackinac more than $100, regardless of whether that donor intends the donation to be used for electioneering, out of fear that Mackinac will have to disclose their identity.

***ANSWER:***

**95. Intervenor-Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 95 concerning Plaintiff's donations,**

**donor restrictions, and donors' knowledge and intentions and therefore deny them. Intervenor-Defendants deny any remaining allegations in Paragraph 95.**

96. The reporting requirements for "electioneering communications" are facially unconstitutionally vague under the First Amendment. Alternatively, the reporting requirements for "electioneering communications" are unconstitutionally vague as applied to donors who do not clearly earmark their donations for electioneering communications.

***ANSWER:***

**96. Denied.**

97. By enforcing Proposal 2's reporting requirements for electioneering communications, Defendants, under color of law, deprive Plaintiff of its right to freedom of speech and association in violation of the First and Fourteenth Amendment to the United States Constitution. Mackinac is thus damaged in violation of 42 U.S.C. § 1983 and is entitled to declaratory relief, a temporary restraining order, a preliminary and permanent injunction against continued enforcement of the unconstitutional law, and attorney fees and expenses under 42 U.S.C. § 1988.

***ANSWER:***

**97. Denied.**

COUNT THREE
RIGHT OF FREE SPEECH AND ASSOCIATION, U.S. CONST. AMENDS. I, XIV
EXACTING SCRUTINY – EXPENDITURES AND COMMITTEES
42 U.S.C. § 1983

98. Plaintiff realleges and incorporates by reference paragraphs 1 through 76.

***ANSWER:***

**98. Intervenor-Defendants incorporate by reference their responses to Paragraphs 1 through 76 as if fully set forth herein.**

99. "To avoid overbreadth concerns in this sensitive area, *Buckley* held that independent groups not engaged in express election advocacy as their major purpose cannot be subjected to the complex and extensive regulatory requirements that accompany the PAC designation." *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 839 (7th Cir. 2014) (citing *Buckley*, 424 U.S. at 79–80).

***ANSWER:***

**99. Intervenor-Defendants admit that the quoted language appears in *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804, 839 (7th Cir. 2014). Intervenor-Defendants deny any remaining allegations in Paragraph 99.**

100. Michigan does not require committees to have express election advocacy as their major purpose to require them to register as political committees and subject them to onerous regulatory requirements. *See* Mich. Comp. Laws § 169.203(4).

***ANSWER:***

**100. Intervenor-Defendants admit that Michigan Compiled Laws § 169.203(4) contains the definition of "committee" quoted in their answer to Paragraph 17. Intervenor-Defendants deny any characterization inconsistent with the statutory text and deny the remaining allegations in Paragraph 100.**

101. By expanding the definition of "expenditures" to include any public communication that "promotes, supports, attacks, or opposes" a candidate or ballot question, regardless of whether it engages in express election advocacy, Proposal 2 captures organizations like Mackinac that engage in public communications and advocacy that might be construed as supporting or attacking a candidate or ballot question if the state determines that the organization did so to influence or attempt to influence voters. Because Michigan defines "candidate" to

include any elected official who is not otherwise disqualified from running for reelection, any public communication that praises or criticizes an elected official at any point during his or her term could be construed as an expenditure intended to influence voters, thus qualifying the organization as a committee.

***ANSWER:***

**101. Denied.**

102. Michigan cannot prove its regulatory requirements for political committees are substantially related and narrowly tailored to an important interest as applied to organizations that merely promote, support, attack, or oppose a candidate or ballot question without engaging in express advocacy or without having express election advocacy as their major purpose.

***ANSWER:***

**102. Denied.**

103. Michigan cannot prove the low $500 expenditure threshold, which could transform multimillion dollar organizations into political committees if they spend a small fraction of their revenue on a communication that merely praises or criticizes an elected official, is narrowly tailored to further an important interest.

***ANSWER:***

**103. Denied.**

104. The extensive regulatory requirements for political committees will reduce Mackinac's speech by imposing significant costs, using resources Mackinac would otherwise deploy to further its mission. The disclosure requirements will also burden Mackinac's right to speech and association by deterring donors from making financial contributions to the organization and deterring third-party vendors from doing business with Mackinac because they

fear harassment or other forms of reprisal from associating with Mackinac. Every time Mackinac publishes the identity of a donor or third-party vendor, it increases the risk that activists or other individuals who disagree with it on matters of public policy will target the donors or its third-party vendors for harassment and intimidation.

***ANSWER:***

**104. Denied.**

105. Michigan's committee registration and reporting requirements for organizations is unconstitutional as applied to organizations like Mackinac that do not engage in express election advocacy or have express election advocacy as their major purpose.

***ANSWER:***

**105. Denied.**

106. By enforcing Proposal 2's reporting requirements for political committees, including the new definition of expenditures, Defendants, under color of law, deprive Plaintiff of its right to freedom of speech and association in violation of the First and Fourteenth Amendment to the United States Constitution. Mackinac is thus damaged in violation of 42 U.S.C. § 1983 and is entitled to declaratory relief, a temporary restraining order, a preliminary and permanent injunction against continued enforcement of the unconstitutional law, and attorney fees and expenses under 42 U.S.C. § 1988.

***ANSWER:***

**106. Denied.**

COUNT FOUR
RIGHT OF FREE SPEECH AND ASSOCIATION, U.S. CONST. AMENDS. I, XIV
VAGUENESS – EXPENDITURES AND COMMITTEES
42 U.S.C. § 1983

107. Plaintiff realleges and incorporates by reference paragraphs 1 through 76.

***ANSWER:***

**107. Intervenor-Defendants incorporate by reference their responses to Paragraphs 1 through 76 as if fully set forth herein.**

108. The Due Process Clause of the Fourteenth Amendment prohibits enforcement of vague laws. *See Miller*, 622 F.3d at 539. The First Amendment likewise forbids enforcement of laws so vague as to chill protected speech. *Id.* "[R]egulated parties should know what is required of them so they may act accordingly." *Fox Television Stations*, 567 U.S. at 253–54. And "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.*

***ANSWER:***

**108. Intervenor-Defendants admit that the Due Process Clause prohibits enforcement of laws that are unconstitutionally vague and that the quoted language appears in *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012).**

109. Proposal 2's new definition of "expenditures" includes every public communication that "promotes, supports, attacks, or opposes" a candidate or ballot question. Prop. 2 § 6(1)(B)(II)(III).

***ANSWER:***

**109. Intervenor-Defendants admit that Section 6(1)(b)(ii)–(iii) of Proposal 2 includes within "expenditure" public communications that promote, support, attack, or oppose a candidate or ballot question. Intervenor-Defendants deny any remaining allegations in Paragraph 109.**

110. The term "promotes, supports, attacks, or opposes" is unconstitutionally vague because no "person of ordinary intelligence can readily identify" what speech it captures. *Miller*,

622 F.3d at 539 (quotation omitted). This new standard captures speech at any point in the year, untethered to any election, but it is impossible to understand—likely capturing any praise or criticism of a candidate, which includes most elected officials during their entire term if they are not disqualified from running for reelection.

***ANSWER:***

**110. Denied.**

111. An organization that makes more than $500 of "expenditures" on public communications that "promote[], support[], attack[], or oppose[]" a candidate or ballot question qualifies as a committee if the state determines it has done so to "influenc[e] or attempt[] to influence the action of the voters." Mich. Comp. Laws § 169.203(4). Mackinac cannot determine whether its speech and advocacy criticizing, praising, or otherwise discussing candidates and ballot questions will meet this standard and subject it to onerous reporting requirements.

***ANSWER:***

**111. Denied.**

112. The reporting requirements for political committees is thus unconstitutionally vague as applied to organizations like Mackinac that do not engage in express election advocacy.

***ANSWER:***

**112. Denied.**

113. By enforcing Proposal 2's reporting requirements for political committees, including the new definition of expenditures, Defendants, under color of law, deprive Plaintiff of its right to freedom of speech and association in violation of the First and Fourteenth Amendment to the United States Constitution. Mackinac is thus damaged in violation of 42 U.S.C. § 1983 and is entitled to declaratory relief, a temporary restraining order, a preliminary

and permanent injunction against continued enforcement of the unconstitutional law, and attorney fees and expenses under 42 U.S.C. § 1988.

***ANSWER:***

**113. Denied.**

PRAYER FOR RELIEF

Wherefore, Plaintiff The Mackinac Center requests judgment be entered in its favor and against Defendants as follows:

***ANSWER:***

**Intervenor-Defendants deny that Plaintiff is entitled to judgment in its favor or to any of the relief requested in the Prayer for Relief, including subparagraphs A through F.**

A. Orders preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Proposal 2's reporting requirements for electioneering communications in Section 51(3);

***ANSWER:***

**Intervenor-Defendants deny that Plaintiff is entitled to the relief requested in subparagraph A.**

B. Orders preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Michigan's regulations and reporting requirements for political committees against Plaintiff;

***ANSWER:***

**Intervenor-Defendants deny that Plaintiff is entitled to the relief requested in subparagraph B.**

C. A declaration that Proposal 2's reporting requirements for electioneering communications in Section 51(3) violates the First Amendment;

***ANSWER:***

**Intervenor-Defendants deny that Plaintiff is entitled to the relief requested in subparagraph C.**

D. A declaration that Michigan's regulations and reporting requirements for political committees violate the First Amendment as applied to Plaintiff;

***ANSWER:***

**Intervenor-Defendants deny that Plaintiff is entitled to the relief requested in subparagraph D.**

E. Costs and attorneys' fees under 42 U.S.C. § 1988; and

***ANSWER:***

**Intervenor-Defendants deny that Plaintiff is entitled to the relief requested in subparagraph E.**

F. Any other relief this Court may grant in its discretion.

***ANSWER:***

**Intervenor-Defendants deny that Plaintiff is entitled to the relief requested in subparagraph F.**

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that they would not otherwise bear, Intervenor-Defendants state the following defenses:

**No Fee Liability for Intervenor-Defendants.** Attorney fees under 42 U.S.C. § 1988 are not recoverable against Intervenor-Defendants absent a showing that their defense is frivolous, unreasonable, or without foundation. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989).

## RELIEF REQUESTED

WHEREFORE, Intervenor-Defendants respectfully request that the Court (a) deny Plaintiff's requests for declaratory and injunctive relief; (b) enter judgment in favor of Defendants and Intervenor-Defendants and against Plaintiff on all claims; (c) dismiss the Complaint; (d) deny Plaintiff's request for costs and attorney fees; and (e) grant such other relief as the Court deems just.

Dated: November 9, 2026

Respectfully submitted,

s/ *Samuel R. Bagenstos*

Samuel R. Bagenstos (P73971)
625 S. State St.
Ann Arbor, MI 48109
(857) 231-1663
sbagen@gmail.com

Stephanie Command*
Tracey Wigglesworth*
1215 K, Suite 2000
Sacramento, California 95814
stephanie@tpl.group
tracey@tpl.group
(916) 674-6440

Counsel for Proposed Intervenor-Defendants

**Applications for admission forthcoming*