**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE MACKINAC CENTER,

Plaintiff,

v.

JOCELYN BENSON, in her official capacity as Michigan Secretary of State, and DANA NESSEL, in her official capacity as Michigan Attorney General,

Defendants,

and

MICHIGANDERS FOR MONEY OUT OF POLITICS BALLOT COMMITTEE, CLEAN WATER ACTION, VOTERS NOT POLITICIANS, and JOANNA WHALEY,

Proposed Intervenor-Defendants.
_______________________________________/

Case No. 1:26-cv-03154-PLM-MV

Hon. Paul L. Maloney

Magistrate Judge Maarten Vermaat

**BRIEF IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE**

**ORAL ARGUMENT REQUESTED**
**EXPEDITED CONSIDERATION REQUESTED**

**INTRODUCTION**

On November 3, 2026, Michigan voters approved Ballot Proposal 2 of 2026 by massive margins. *See* Kelly House, *Michigan Elections: Voters Approve Proposal 2 Money Out of Politics Question*, Bridge Mich. (Nov. 3, 2026), https://bridgemi.com/michigan-politics/michigan-elections-voters-decide-on-proposal-2-money-out-of-politics-question/ ("The Associated Press declared the proposal passed at about 9:45 p.m., with 4 out of every 5 votes supporting the measure in early returns."). Proposal 2 makes a series of connected reforms to campaign finance in Michigan elections. As relevant to the current action, Proposal 2 expands disclosure requirements,

including requirements for disclosing donor information, to apply to communications clearly identifying candidates or ballot questions (even if those communications do not expressly advocate voting for or against them) and to apply to internet political communications.

The Supreme Court has repeatedly endorsed disclosure as a remedy for the pathologies of massive campaign spending. In *Citizens United v. FEC*, 558 U.S. 310, 371 (2010), it explained that "[t]he First Amendment protects political speech; and disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages." The Court recently reaffirmed that "disclosure can deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity." *Nat'l Republican Senatorial Comm. v. FEC*, 609 U.S. 908, 927 (2026) (cleaned up).

Before midnight on election night, and weeks before any official certification of the results, Plaintiff filed this action seeking declaratory and injunctive relief against enforcement of Proposal 2. ECF No. 1, PageID.1. Proposed Intervenors are the committee that drafted, sponsored, and defended the new law and organizations that supported the effort to adopt Proposal 2 and continue to participate in the political process and have an interest in Proposal 2's disclosure requirements remaining in place. They seek to intervene to defend the Act.

Proposed Intervenors have met each requirement for intervention as of right. The motion is timely—indeed, it is being filed less than a week after initiation of the case. Proposed Intervenors have substantial legal interests in Proposal 2's validity, interests that the Sixth Circuit has recognized in previous cases. *See, e.g.*, *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245–47 (6th Cir. 1997). Plaintiff's proposed relief would impair those interests. And the State Defendants, who must weigh enforcement priorities and institutional considerations, and who may seek

limiting constructions or endorse other interpretations of Proposal 2 that Proposed Intervenors reject, may not adequately represent them.

At a minimum, the Court should permit intervention under Rule 24(b), as it did for the sponsor of a voter-initiated constitutional amendment in *Daunt v. Benson*, No. 19-cv-614, 2019 WL 12050350, at *2 (W.D. Mich. Aug. 28, 2019), and *Banerian v. Benson*, No. 22-cv-54, ECF No. 31, PageID.458 (W.D. Mich. Feb. 11, 2022) (three-judge court).

## BACKGROUND

### A. Proposal 2

Proposal 2 makes a series of related amendments to the Michigan Campaign Finance Act, MCL 169.201 *et seq.* This case involves a challenge to Proposal 2's disclosure provisions. These provisions update Michigan's existing requirements for disclosure of independent expenditures. Prior to the enactment of Proposal 2, Michigan's campaign finance law required regular reporting of independent expenditures "advocating the election or defeat of a candidate or the qualification, passage, or defeat of a ballot question, in an amount of $100.01 or more in a calendar year." MCL 169.251(1) (pre-Proposal 2 text). But the statute explicitly limited that requirement to communications containing language specifically and explicitly urging a vote for or against a candidate or measure. *See* MCL 169.206(2)(j) (pre-Proposal 2 text) (requirement does not apply "if the communication does not in express terms advocate the election or defeat of a clearly identified candidate so as to restrict the application of this act to communications containing express words of advocacy of election or defeat, such as 'vote for', 'elect', 'support', 'cast your ballot for', 'Smith for governor', 'vote against', 'defeat', or 'reject'"). Proposal 2's new provisions delete this "magic words" provision and extend the definition of expenditures to communications that "promote[], support[], attack[], or oppose[]" a candidate or ballot question, "regardless of whether the communication expressly advocates" the election or defeat of the candidate or

question. MCL 169.206(1)(b)(ii)–(iii) (as amended by Proposal 2). Proposal 2 also requires disclosure for a new category of "electioneering communications," MCL 169.251(3) (added by Proposal 2), which are those that "reference[] a clearly identifiable candidate, regardless of whether the communication contains express advocacy, within 100 days before a general election or within 30 days before a primary or special election where the candidate appears on the ballot," and are "targeted to the relevant electorate where the candidate appears on the ballot." MCL 169.205(4) (added by Proposal 2). Proposal 2 directs the Secretary of State to "promulgate rules defining the meaning of 'targeted to the relevant electorate' for purposes of this section." *Id.*

### B. Proposed Intervenors

Michiganders for Money Out of Politics Ballot Committee ("MMOP") is the ballot question committee that drafted Proposal 2, circulated petitions for six months, submitted 561,282 signatures to the Michigan Board of State Canvassers, defended the certification of the proposal before the Board and the Michigan Supreme Court, and ran the successful campaign to encourage voters to adopt the proposal. Ex. C, Decl. of Sean McBrearty ¶¶ 5–10. It intends to continue "to participate in state rulemaking procedures, educate the public about the implementation and impact of Proposal 2, review and publicize disclosure reports filed under Proposal 2, and otherwise ensure that the goals of this proposal are met in its implementation." *Id.* ¶ 11.

Clean Water Action ("CWA") is a 501(c)(4) organization whose mission is "to protect the environment, human health, economic well-being, and community quality of life through grassroots organizing, public education, and political action." Ex. D, Decl. of Emily Woodcock ¶ 2. CWA "has been involved in MMOP since its inception," including by fielding a "professional canvass team" that "spent six months collecting 50,628 signatures for Proposal 2." *Id.* ¶ 4. The organization often "uses campaign finance disclosures in its work," including by "educat[ing] its members and voters about funders behind election advertising and us[ing] information around

political spending as one element in making candidate endorsement decisions." *Id.* ¶ 8. It plans to use the disclosures required by Proposal 2 "to enhance [its] member education efforts and to make the endorsement process simpler and more transparent." *Id.* CWA also makes independent expenditures regarding Michigan elections through a state independent expenditure committee; it accordingly is directly regulated by Proposal 2's expanded definition of independent expenditures. *Id.* ¶ 7. *See* MCL 169.209(2) (tying definition of "independent expenditure" to definition of "expenditure"); MCL 169.206(1)(b)(ii)–(iii) (as amended by Proposal 2) (expanding definition of "expenditure" to include communications that promote, support, attack, or oppose, even if they do not expressly advocate a vote for or against a candidate or measure).

Voters Not Politicians ("VNP") is "a nonpartisan advocacy organization that works to effect structural and systemic democracy reform through engagement of people in Michigan." Ex. E, Decl. of Christy McGillivray ¶ 2. VNP participated in the campaign to enact Proposal 2, by "drafting and reviewing petition language, establishing the MMOP governance structure, developing campaign plans for the circulation phase, procuring legal representation, collecting signatures, lobbying elected officials, and funding the campaign." *Id.* ¶ 4. It intends to use the information generated by Proposal 2's disclosures to support its ongoing advocacy for political and ethics reform. *Id.* ¶ 6.

Joanna Whaley was elected in November 2026 to serve as the state Representative for Michigan's Second House District. Ex. F, Decl. of Joanna Whaley ¶ 3. During her 2026 campaign, Representative-elect Whaley faced advertisements, supported by outside spending, that did not use the "magic words" of "vote for" or "vote against" and thus would not trigger disclosures under the law prior to Proposal 2 but that would trigger disclosures under Proposal 2. *Id.* ¶¶ 8–9, 13. Those advertisements "were continuous and were funded by money that was unable to be traced," and

they "ran during the final 5 weeks before the election." *Id.* ¶ 8. She intends to run for re-election and expects to confront similar outside spending in her re-election campaign. *Id.* ¶¶ 6–7, 14–16.

### C. This Lawsuit

Plaintiff filed suit on November 3, 2026. ECF No. 1. It claims that Proposal 2's new disclosure requirements violate the First Amendment. *Id.* It seeks declaratory relief, as well as preliminary and permanent injunctions, against enforcement of these requirements. *Id.*

## ARGUMENT

### I. Proposed Intervenors Are Entitled to Intervene as of Right

"On timely motion, the court must permit anyone to intervene" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). By its terms, the rule establishes four requirements for intervention as of right: (1) timeliness; (2) a sufficient interest in the action; (3) that the action "may as a practical matter impair or impede" that interest; and (4) that existing parties may not "adequately represent" that interest. Proposed Intervenors readily satisfy all four of these criteria.

### A. The Motion Is Timely

There can be no doubt that this motion is timely. Proposed Intervenors filed this motion six days after the filing of the complaint, before any responsive pleading was due. An intervention motion "filed just two weeks after the complaint" is "timely as a matter of law." *Mich. State AFL-CIO*, 103 F.3d at 1245; *accord Daunt*, 2019 WL 12050350, at *2 (holding that "a motion for intervention brought within two weeks after the filing of the complaint is timely as a matter of law").

### B. Proposed Intervenors Have Substantial Legal Interests in This Action

The Sixth Circuit has "adopted a rather expansive notion of the interest sufficient to invoke intervention of right." *Lucas Cnty. Bd. of Comm'rs v. EPA*, 169 F.4th 689, 705 (6th Cir. 2026) (cleaned up); *accord Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 771–72 (6th Cir. 2022). The requirement "is a lower threshold than the injury-in-fact requirement of Article III standing." *Est. of Lewis ex rel. Duran v. City of Columbus*, 158 F.4th 814, 823 (6th Cir. 2025). "A specific legal or equitable interest is not required." *Lucas Cnty. Bd. of Comm'rs*, 169 F.4th at 705 (cleaned up). Although "[t]he inquiry into the substantiality of the claimed interest is necessarily fact-specific," *Mich. State AFL-CIO*, 103 F.3d at 1245, the proposed intervenors must merely show that they have "a significant interest in the subject matter of the underlying case." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999).

MMOP's right to intervention follows directly from the Sixth Circuit's decision in *Michigan State AFL-CIO*. There, several labor organizations and union officials challenged the constitutionality of an amendment to Michigan's campaign finance law that imposed new restrictions on union political spending. *See id.* at 1244. The Michigan Chamber of Commerce sought to intervene. *See id.* The district court denied the motion, but the Sixth Circuit reversed, holding that the Chamber was "entitled to intervention as of right." *Id.* at 1248. The Sixth Circuit rested its holding on the following facts:

> the Chamber was (1) a vital participant in the political process that resulted in legislative adoption of the 1994 amendments in the first place, (2) a repeat player in Campaign Finance Act litigation, (3) a significant party which is adverse to the challenging union in the political process surrounding Michigan state government's regulation of practical campaign financing, and (4) an entity also regulated by at least three of the four statutory provisions challenged by plaintiffs.

*Id.* at 1247.

Proposed Intervenors have the same sort of interests as the Sixth Circuit found sufficient for intervention as of right in *Michigan State AFL-CIO*. Proposed Intervenor MMOP was "a vital participant in the political process that resulted in" adoption of Proposal 2. *Id.* MMOP drafted the proposal's language, circulated petitions for six months, submitted 561,282 signatures to the Michigan Board of State Canvassers, defended the certification of the proposal before the Board and the Michigan Supreme Court, and ran the successful campaign to encourage voters to adopt the proposal. *See* Ex. C, Decl. of Sean McBrearty ¶¶ 5–10.

MMOP also has a continuing interest in the implementation of Proposal 2's disclosure requirements. As part of its function of "public education" regarding money in politics, Ex. C ¶ 12, the organization intends to "review and publicize disclosure reports filed under Proposal 2," *id.* ¶ 11.

Proposed Intervenors Clean Water Action and Voters Not Politicians were also key participants in the process—they were members of the coalition that drafted Proposal 2, sent their own staff or volunteers to gather signatures and promote the measure to voters once it was on the ballot. *See supra* Background Part B. Both of these proposed intervenors remain continually engaged in the political process and intend to use the disclosures generated by Proposal 2 in their public education and endorsement work. *See id.*

Proposed Intervenor Clean Water Action is "regulated by" the "statutory provisions challenged by plaintiffs," *Mich. State AFL-CIO*, 103 F.3d at 1247. When these organizations make independent expenditures through their independent expenditure committees, they must now make disclosures of spending on communications that promote, support, attack, or oppose a candidate or ballot question, or that reference a clearly identifiable candidate and are targeted to the relevant electorate within 100 days of an election. *See supra* Background Part A.

Finally, Proposed Intervenor Joanna Whaley has a direct interest in Proposal 2 remaining in effect. While running her 2026 campaign before the people adopted Proposal 2, Whaley confronted scurrilous advertising within weeks of her election that did not use the "magic words" and thus was hard to pinpoint to a particular source of funding. She expects to face similar advertisements when she runs for reelection in 2028, and she has a strong interest in ensuring that, to the extent possible, she can know who is financing advertisements opposing her so that she can most effectively respond. Proposal 2 thus ensures that Whaley can fairly compete in the re-election process. The Sixth Circuit has recognized that a competitive injury is sufficient to demonstrate a significant protectable interest that supports intervention. *See Grutter*, 188 F.3d at 398–99.

The stake the Proposed Intervenors have in this litigation goes far beyond the sort of "general ideological interest" the Sixth Circuit has found insufficient. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007). *Accord Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007). This litigation will affect whether the Proposed Intervenors can engage in their education and advocacy work in the political process moving forward and whether and how they can make expenditures in that process. Those concrete interests are plainly significant and protectable. *See Est. of Lewis*, 158 F.4th at 824 (sufficient interest where intervenor "was a vital participant in the process that produced the policies the Estate now challenges and seeks to permanently enjoin, and its members will be regulated by those policies and any changes to them").

### C. Disposing of This Action May Impair Proposed Intervenors' Interests

The Sixth Circuit has repeatedly stated that "[t]he burden for demonstrating impairment of a substantial interest" is "minimal." *Lucas Cnty. Bd. of Comm'rs*, 169 F.4th at 705 (cleaned up). "To satisfy this element of the intervention test, a would-be intervenor must show only that

impairment of its substantial legal interest is possible if intervention is denied." *Mich. State AFL-CIO*, 103 F.3d at 1247.

Proposed Intervenors readily satisfy that burden. If Proposal 2 is invalidated, MMOP's interest in securing its passage will be entirely vitiated, and all of the intervenors' interests in operating under a campaign finance system in which independent expenditures are fully disclosed will be significantly impaired as well.

**D. The State Defendants May Not Adequately Represent Proposed Intervenors' Interests**

This is a case in which "there is sufficient doubt about the adequacy of representation to warrant intervention." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). As the Sixth Circuit has explained, "a presumption of adequate representation arises" when "the proposed intervenor and a party to the suit share the same ultimate objective." *Est. of Lewis*, 158 F.4th at 827 (cleaned up). But an intervenor "can overcome that presumption if it shows that the current parties have interests adverse to its own." *Id.* The intervenor's burden is "minimal in that it need not prove that the [existing party's] representation will be inadequate; it need only show that it 'may be' inadequate." *Id.* (cleaned up). *See also Trbovich*, 404 U.S. at 538 n.10 ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

There are good reasons to believe representation may be inadequate here. Defendants represent the public at large and must weigh considerations Proposed Intervenors do not share. These include Defendants' obligations to take account of enforcement priorities and resource limits and their interest in preserving enforcement discretion. These interests may lead Defendants to concede the invalidity of certain applications of Proposal 2 or agree to narrowing constructions

to it, or even to enter into a settlement of the case. Proposed Intervenors, by contrast, have a direct stake in every provision of Proposal 2.

This divergence of interests is sufficient to satisfy the adequacy prong. Proposed Intervenors need not show that it is certain that their litigation decisions will diverge from those of Defendants—"Certainty about future events is not required." *Est. of Lewis*, 158 F.4th at 827 (cleaned up). Defendants' representation of Proposed Intervenors' interests "may be" inadequate, and that is enough. *Id.*

## II. Alternatively, the Court Should Grant Permissive Intervention

Fed. R. Civ. P. 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." The Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

If the Court does not grant intervention as of right, it should grant permissive intervention under Rule 24(b). As we have shown above, this motion is timely. Proposed Intervenors' defense—that Proposal 2 is constitutional—is the central question in the case. And intervention at this embryonic stage will not cause delay or prejudice: Proposed Intervenors will meet existing deadlines and coordinate with Defendants to avoid duplication.

This Court has previously granted permissive intervention to sponsors of voter-initiated measures. In *Daunt*, the Court permitted Voters Not Politicians, the sponsor and drafter of the constitutional amendment creating the Michigan Independent Citizens Redistricting Commission (and a proposed intervenor here), to intervene in defense of the constitutionality of that commission. The Court found "no dispute that [the ballot sponsor] has a defense that shares with the main action a common question of law or fact." *Daunt*, 2019 WL 12050350, at *2. And given the "early stage of the case," the Court found "no significant concern that permitting intervention

will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* And against the objection that the Secretary of State adequately represented the ballot sponsor, the Court explained that "having input from both [the sponsor] and Defendant Benson, as co-defendants, will be helpful to the Court in analyzing the merits." *Id.* The same is true here.

Indeed, courts have repeatedly granted permissive intervention to the sponsors of ballot initiatives in cases challenging the adoption or implementation of those initiatives. In *Banerian*, *supra*, this Court granted permissive intervention to Voters Not Politicians in a challenge to a districting plan drawn by the Michigan Independent Citizens Redistricting Commission. In *Dinner Table Action v. Schneider*, No. 24-cv-00430-KFW, 2025 WL 604885, at *1–3 (D. Me. Feb. 25, 2025), the court granted permissive intervention to "the nonpartisan fair elections organization EqualCitizens, citizens' initiative proponents Cara and Peter McCormick, and Maine State Senator Richard A. Bennett" in a challenge to a ballot initiative that regulated independent expenditures. *See also Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 571–72 (9th Cir. 2014) (noting that district court had granted intervention to the "official proponents" of a ballot initiative in a challenge to the initiative's constitutionality); *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 589 (8th Cir. 2003) (noting that district court had granted permissive intervention, in challenge to ballot measure known as Amendment E, to two organizations that were "heavily involved in drafting Amendment E and promoting it during the campaign leading up to the referendum").

The case for intervention is even stronger here, as the proposed intervenors include not just Proposal 2's sponsor but also organizations and a political candidate who have an ongoing interest in participating in the political process under the rules set by that initiative. If the Court does not grant intervention as of right, it should grant permissive intervention.

### III. The Motion Complies with Rule 24(c)

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Proposed Intervenors have attached their Answer and Affirmative Defenses. *See* W.D. Mich. LCivR 5.7(f).

### CONCLUSION

The Court should grant the motion and permit Proposed Intervenors to intervene as defendants as of right under Rule 24(a)(2) or, alternatively, permissively under Rule 24(b)(1)(B), and should enter the order attached as Exhibit B.

Dated: November 9, 2026

Respectfully submitted,

s/ *Samuel R. Bagenstos*

Samuel R. Bagenstos (P73971)
625 S. State St.
Ann Arbor, MI 48109
(857) 231-1663
sbagen@gmail.com

Stephanie Command*
Tracey Wigglesworth*
1215 K, Suite 2000
Sacramento, California 95814
stephanie@tpl.group
tracey@tpl.group
(916) 674-6440

Counsel for Proposed Intervenor-Defendants

**Applications for admission forthcoming*

**CERTIFICATE OF COMPLIANCE REGARDING WORD COUNT**
(W.D. Mich. LCivR 7.3(b)(ii))

This brief complies with the word limit of W.D. Mich. LCivR 7.3(b)(i) because, excluding the parts of the brief exempted by that rule, it contains 3,638 words. The word count was generated using Microsoft Word.

s/ *Samuel R. Bagenstos*