UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE MACKINAC CENTER,<br>Plaintiff,<br><br>-v-<br><br>JOCELYN BENSON, in her official capacity as Michigan Secretary of State, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:26-cv-3154<br><br>Honorable Paul L. Maloney |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE**

Pending before the court is Proposed Intervenor-Defendants' Motion to Intervene (the "Motion"). ECF No. 5. For the reasons set forth below, the court will **GRANT** Clean Water Action's ("CWA") request to intervene in this action but will **DENY** intervention as to Michiganders for Money Out of Politics Ballot Committee ("MMOP"), Voters Not Politicians ("VNP"), and Joanna Whaley.

## I. BACKGROUND

This action is a constitutional challenge to Proposal 2, a ballot initiative amending the Michigan Campaign Finance Act. Michigan voters approved Proposal 2 on November 3, 2026. The Michigan Board of State Canvassers must certify the results of the election by November 23, 2026. *See* Mich. Comp. Laws § 168.842(1) ("[T]he board of state canvassers . . . shall meet on or before the twentieth day after the election."). Assuming the results are certified on November 23, Proposal 2 will take effect on December 3, 2026. *See* Mich. Const., art. II, § 9 ("Any law . . . approved by a majority of the votes cast thereon at

any election shall take effect 10 days after the date of the official declaration of the vote."). Shortly after the election results were announced on November 3, Plaintiff filed suit in this court asserting that Proposal 2 violates the United States Constitution. ECF No. 1.

Proposal 2 alters the Michigan Campaign Finance Act in three fundamental ways. First, Proposal 2 restricts political contributions by regulated electric and gas utility companies, certain government contractors, and organizations or individuals with substantial ties to those companies or contractors. Second, Proposal 2 imposes stricter reporting and expenditure requirements. Third, Proposal 2 requires internet political advertisements to disclose the person or entity that funded them.

This action focuses solely on Proposal 2's reporting and expenditure requirements. Understanding these changes requires taking a step back to explain how Proposal 2 defines certain terms. First, Proposal 2 expands the definition of "expenditure" to include not only payments for communications that expressly advocate for a certain election result, but also any "public communication" that "promotes, supports, attacks, or opposes" a candidate or ballot question "regardless of whether the communication expressly advocates" for an election result. ECF No. 1–1 Prop. 2 § 6(1)(B) PageID.29. Second, Proposal 2 defines a "committee" as any group[1] that receives $500 or more in a calendar year in contributions or makes $500 or more in a calendar year in expenditures "for the purpose of influencing or attempting to influence the action of the voters for or against the nomination or election of a candidate, the qualification, passage, or defeat of a ballot question, or the qualification of a

[1] Individuals do not fall within the definition of "committee" unless the individual is a candidate. ECF No. 1–1 Prop. 2 § 3(5) PageID.29.

new political party[.]" *Id.* § 3(5) PageID.29. Third, Proposal 2 defines "independent expenditure" to mean expenditures by a person "not made in cooperation, consultation, or concert with, or at the request or suggestion of, a ballot question committee or a candidate, a candidate committee or its agents, or a political party committee or its agents, and if the expenditure is not a contribution to a committee." *Id.* § 9(2) PageID.30. Fourth, Proposal 2 defines "electioneering communication" to mean any "public communication" that (1) "references a clearly identifiable candidate, regardless of whether the communication contains express advocacy, within 100 days before a general election or within 30 days before a primary or special election where the candidate appears on the ballot," and that (2) "is targeted to the relevant electorate where the candidate appears on the ballot." *Id.* § 5(4) PageID.29.

The court will now summarize Proposal 2's new reporting and expenditure requirements. Proposal 2 expands both who must file reports and what must be reported.

First, by expanding the definition of "expenditure," Proposal 2 increases the number of groups and organizations that fall within the definition of "committee," which means existing reporting requirements now apply to a broader category of groups and organizations. These reporting requirements generally include[2]: (1) filing campaign statements, Mich. Comp. Laws § 169.226(1); (2) reporting every expenditure exceeding $50, *Id.* 169.226(1)(j); and (3) appointing a treasurer to authorize every expenditure. *Id.* §§ 169.221; 169.224. Campaign statements must disclose extensive information about individual donors. For

[2]Because Michigan law recognizes several different categories of committees, there are some nuances depending on the type of committee at issue.

example, a committee's campaign statement must include "[t]he full name of each individual from whom contributions are received during the period covered by the campaign statement, together with the individuals' street address, the amount contributed, the date on which each contribution was received, and the cumulative amount contributed[.]" *Id.* § 169.226(e). And for those whose cumulative contributions exceed $100, the campaign statement also must identify that person's "occupation, employer, and principal place of business[.]" *Id.* The groups and organizations who did not qualify as "committees" before—but who now qualify because of Proposal 2's new definition of "expenditure"—must begin complying with these reporting requirements.

Second, Proposal 2 imposes reporting requirements on persons who fall outside the definition of "committee" but make "independent expenditures" advocating for a certain election result "in an aggregate amount of $500.01 or more in a calendar year." ECF No. 1-1 Prop. 2 § 51(1) PageID.32. Within 10 days of making the independent expenditures, Proposal 2 requires those persons to file a report disclosing anyone who contributed more than $100 for the independent expenditures. *Id.*

Third, Proposal 2 imposes reporting requirements on persons who fall outside the definition of "committee" but make electioneering communications that total at least $5,000 in a calendar year. *Id.* 51(3) PageID.32. Persons who make electioneering communications must file a report within 10 days of doing so. *Id.* The report must identify every electioneering communication made that year, the date and amount of any disbursement for the communication, the name and address of any vendor paid as part of the communication, all candidates clearly identified in the communication, and "the name, address, occupation,

employer, and principal place of business of each person that contributed $100.01 or more[.]" *Id.*

Proposal 2's reporting and expenditure requirements would presumably apply to Plaintiff. Plaintiff is a "Michigan-based, non-partisan research and educational institute advancing policies fostering free markets, limited government, personal responsibility, and respect for private property." ECF No. 1 PageID.9. Plaintiff regularly publishes communications about candidates or ballot questions. *Id.* PageID.10. Although Plaintiff "does not engage in election advocacy," Plaintiff believes that at least some of its communications may fall under the new definition of "expenditure" as communications that "promote, support, attack, or oppose" a candidate or ballot question. *Id.* And because Plaintiff spends "significantly more than $500 each year" on these communications, Plaintiff would now qualify as a "committee." *Id.* PageID.12. As a "committee," Plaintiff would be forced to comply with the reporting requirements. If Plaintiff does not qualify as a "committee" under Proposal 2's new definitions, then Plaintiff believes that it nevertheless must comply with the reporting requirements because at least some of its speech "will undoubtedly be deemed 'electioneering communications.'" *Id.* PageID.13.

Believing Proposal 2's reporting and expenditure requirements to be unconstitutional, Plaintiff sued the Michigan Secretary of State and the Michigan Attorney General (collectively, the "State Defendants") in this court on November 3, 2026. ECF No. 1. Plaintiff seeks a declaration that Proposal 2's reporting and expenditure requirements (1) violate its First Amendment rights to free speech and association, and (2) are unconstitutionally vague and overbroad. *Id.*

MMOP, CWA, VNP, and Whaley (collectively, the "Proposed Intervenors") filed their motion to intervene in this action on November 9, 2026. ECF No. 5. CWA and VNP are both members of the Taking Back Our Power coalition, the group that formed MMOP. ECF No. 5–3 PageID.106; ECF No. 5–5 PageID.111. The coalition formed MMOP for the express purpose of drafting and defending Proposal 2. ECF No. 5–3 PageID.101. Consistent with this purpose, MMOP drafted Proposal 2, sponsored the initiative petition, and defended it through the certification process. *Id.* Whaley serves as the state Representative for Michigan's Second House District. ECF No. 5 PageID.127. Whaley ran against individuals with advertisements supported by outside spending that did not have to disclose who paid for them under the old campaign-financing laws. *Id.* Proposed Intervenors argue that they are entitled to intervention as of right, or, in the alternative, permissive intervention. *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24 governs intervention. Rule 24 recognizes two methods of intervention: intervention as of right and permissive intervention. Rule 24(a) requires courts to allow a proposed intervenor to intervene as of right when the proposed intervenor (1) timely files its motion to intervene, (2) has a substantial legal interest in the action, (3) will suffer impairment of its legal interest if the court denies intervention, and (4) establishes that the current parties before the court do not adequately represent its legal interest. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). Rule 24(b) vests courts with discretion to decide whether to allow a proposed intervenor to intervene when (1) the proposed intervenor timely filed its motion to intervene, and (2) the proposed

intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Once the proposed intervenor establishes that it has satisfied these two requirements, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). The court enjoys substantial discretion in deciding whether to allow permissive intervention; indeed, even when "the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Linney's Pizza, LLC v. Bd. of Governors Fed. Rsrv. Sys.*, No. 3:22-cv-00071, 2025 WL 1260807, at *8 (E.D. Ky. May 1, 2025) (internal citations and quotations omitted).

## III. ANALYSIS

Rule 24(a) entitles CWA to intervention as of right but not MMOP, VNP, or Whaley. Because CWA will adequately represent MMOP's, VNP's, and Whaley's interests, the court declines to exercise its discretion to allow permissive intervention.

### A. Intervention as of Right

First, the request to intervene is timely as a matter of law because Proposed Intervenors filed their Motion six days after Plaintiff filed its complaint. ECF No. 6 PageID.128; *Miller*, 103 F.3d at 1245 (concluding that a motion to intervene filed "just two weeks after the complaint" was "timely as a matter of law").

Second, CWA—unlike MMOP, VNP, and Whaley—has a substantial legal interest in this action. In *Northland Family Planning Clinic, Inc. v. Cox*, the Sixth Circuit drew a sharp distinction between public interest groups seeking to intervene who were merely "involved

in the process leading to the adoption of the challenged statute," and public interest groups who were involved in the process *and* "are regulated by the new law[.]" 487 F.3d 323, 344–45 (6th Cir. 2007). The law recognizes a substantial legal interest for the latter group only. *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007) (citing *Cox*, 487 F.3d at 343–46) ("[An] organization involved in the process leading to the adoption of a challenged law does not have a substantial legal interest in the subject matter of a lawsuit challenging the legality of the already-enacted law, unless the challenged law regulates the organization or its members."). CWA, VNP, and MMOP are public interest groups that were involved in the process leading to the adoption of Proposal 2. However, Proposal 2's reporting and expenditure requirements only regulate CWA, which makes independent expenditures that trigger Proposal 2's new requirements. ECF No. 6 PageID.130. On this record, VNP and MMOP do not have a substantial legal interest in this action. As for Whaley, her claimed interest is "in ensuring that, to the extent possible, she can know who is financing advertisements opposing her so that she can most effectively respond." ECF No. 6 PageID.131. In other words, Whaley's interest "simply pertains to the enforceability of [Proposal 2] in general," which the Sixth Circuit has held is not "cognizable as a substantial legal interest sufficient to require intervention as of right." *Cox*, 487 F.3d at 346. CWA is the only Proposed Intervenor with a substantial legal interest in this action.

Third, denying intervention to CWA would impair its interest because "the precedential effect of an adverse ruling" by this court could hinder CWA's ability "to litigate the validity of Michigan's system for regulating campaign finance both in currently ongoing cases and in future challenges." *Miller*, 103 F.3d at 1247.

Finally, CWA has established that the State Defendants may not adequately represent its interest, which is all that is required to satisfy the final element of Rule 24(a). *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (noting that element four is satisfied when the proposed intervenor "shows that representation of his interest 'may be' inadequate'"). CWA intends to argue that the court should uphold Proposal 2's reporting and expenditure requirements in their entirety. The State Defendants, however, could elect to argue for narrowing constructions or even concede that the court should strike down Proposal 2. Thus, CWA has shown that the State Defendants may not adequately represent its interest. The court therefore concludes that Rule 24(a) entitles CWA to intervention as of right in this action.

**B. Permissive Intervention**

Even if Rule 24(a) did not entitle CWA to intervention as of right, the court would grant CWA's request for permissive intervention. First, as discussed above, the request to intervene is timely. Second, CWA's defense shares a common question of law or fact with the main action: Do Proposal 2's reporting and expenditure requirements violate the Constitution? Third, intervention would not delay or prejudice the adjudication of the original parties' rights given the early stage of this litigation and the timing of the Motion.

The court declines, however, to grant MMOP, VNP, or Whaley permissive intervention. While MMOP, VNP, and Whaley meet the requirements for permissive intervention, the court may consider "any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Michigan*, 424 F.3d at 445. One such relevant factor is whether the proposed intervenor's interests are already adequately

represented. *T-Mobile Ne. LLC v. Barnstable*, 969 F.3d 33, 41 (1st Cir. 2020) ("To begin, a district court considering requests for permissive intervention should ordinarily give weight to whether the original parties to the action adequately represent the interests of the putative intervenors."). CWA will adequately represent MMOP's, VNP's, and Whaley's interests. All four Proposed Intervenors ask the court to uphold Proposal 2's reporting and expenditure requirements in their entirety. The court therefore concludes that CWA will adequately represent the others' interests, so the court declines to exercise its discretion to allow MMOP, VNP, or Whaley to intervene in this action.

## IV. CONCLUSION

The court therefore **GRANTS** the Motion in part and **DENIES** the Motion in part. ECF No. 5. The court grants CWA's request to intervene in this action but denies intervention as to MMOP, VNP, and Whaley. The court **ORDERS** CWA to file its answer to the Plaintiff's Complaint within 14 days of the date of this opinion and order.

**IT IS SO ORDERED.**

Date: November 20, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge